UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :

SOTHEBY'S INTERNATIONAL REALTY, INC.,   :

                Plaintiff,          :

                                              :     06 Civ. 1725 (GEL)

   -against-                         :
                                              :     **OPINION AND ORDER**

CONRAD M. BLACK,                          :

                Defendant.        :

------------------------------------------------------------x

Joseph A. Boyle and Geoffrey W. Castello, Kelley Drye & Warren LLP, New York, New York, for Plaintiff.

Marc D. Powers and John Siegal, Baker & Hostetler LLP, New York, New York, for Defendant.

GERARD E. LYNCH, District Judge:

      Sotheby's International Realty, Inc. ("Sotheby's"), a real estate broker, brings this action for breach of contract against Conrad M. Black, seeking payment of a commission on the sale of Black's New York condominium. Black moves to stay the action pending resolution of a dispute between him and the United States Government over the seizure of certain funds that Black had earmarked to pay the commission. Sotheby's cross-moves for summary judgment. For the reasons below, Black's motion to stay will be denied, and plaintiff's motion for summary judgment will be granted in part and denied in part.

**BACKGROUND**

      The following facts are not in dispute. In April 2005, Black retained Sotheby's to sell his Park Avenue apartment, promising to pay a 5.5% commission on the eventual sale price. On

June 8, 2005, Black and a buyer reached an agreement pursuant to which Black agreed to sell the apartment to the buyer for $10,500,000. At the time of the agreement, the buyer provided a deposit of $1,020,000, with the balance due at closing. This initial deposit was placed in an escrow account with Black's attorneys at Sullivan & Cromwell LLP ("S&C"), to be held until the closing.

The transaction closed on October 7, 2005. The buyer provided S&C with a check for $7,908,867, representing the net proceeds of the transaction. S&C issued a check to Sotheby's from its escrow account for $557,500, the commission due under Black's agreement with Sotheby's.[1]

Immediately after the closing, Black's attorney was stopped in the elevator by several federal agents, who served her with a warrant and seized the check for $7,908,867. The warrant had been issued the previous day by the United States District Court for the Northern District of Illinois, based on that Court's determination that the funds were potentially forfeit to the United States in connection with mail and wire fraud charges on which Black was indicted shortly thereafter. Additionally, the Government seized the $1,020,000 on deposit in S&C's escrow account. Due to this seizure, the funds necessary to cover the check issued to Sotheby's were not available, and S&C placed a stop-payment order on the check.

---

[1] Sotheby's asserts that it presented an invoice to Black for $557,000, which it claims "represented the amount due to [Sotheby's] pursuant to the [agreement]." (Pl. R. 56.1 Stmt. ¶ 10.) However, Black, by his attorneys at S&C, issued a check to Sotheby's "in the amount of $557,500," (id. ¶), which is actually 5.5% of $10,500,000. The parties do not explain why plaintiff's invoice would state the amount due as $557,000, and neither party places any importance on this discrepancy. Black disputes that Sotheby's presented an invoice of any kind, but does admit that S&C issued a check to Sotheby's for $557,500 at the closing. (Def. R. 56.1 Stmt. ¶ 11.)

Black contends that any funds beyond the net proceeds of the sale of his apartment (such as taxes and the commission) were wrongfully seized, and asks this Court to stay proceedings pending resolution of this issue in the criminal case in the Northern District of Illinois. Sotheby's contends that the two matters are unrelated, and that Black simply owes it money that has not been paid.

**DISCUSSION**

I. Black's Stay Application

The pendency of "civil and criminal proceedings covering the same ground may sometimes justify deferring civil proceedings until the criminal proceedings are completed." Nosik v. Singe, 40 F.3d 592, 596 (2d Cir. 1994). This is particularly so where concurrent civil and criminal proceedings brought by the Government may threaten a defendant's exercise of his Fifth Amendment right against self-incrimination. United States v. All Assets of Statewide Auto Parts, Inc., 971 F.2d 896, 905 (2d Cir. 1992).

The present case, however, presents no such threat. The instant civil matter is a simple action for breach of a brokerage contract. This action has nothing whatsoever to do with the criminal charges against Black, which stem from entirely unrelated business dealings. Black does not even argue that his defense of this action would require testimony that could incriminate him in connection with the criminal case. Rather, Black contends that the cases are related because the Government claims that the apartment constituted proceeds of Black's alleged crimes.

Black's contention is fatuous. The two cases concern entirely different sets of facts with virtually no overlap. While it is true that Black's acquittal in the criminal case would result in

3

return of the disputed funds to him, and thus (presumably) in payment of the commission owed to Sotheby's, Black's contention that an acquittal in the criminal case would "moot" this case is false. (Def. Reply 2.) It is Black's payment of the commission to Sotheby's, not the release of funds to Black, that would moot this action. And whatever the effect of an acquittal, Black's conviction would leave this case exactly where it is today.

Furthermore, the balance of equities does not favor a stay. If plaintiff's allegations prove true, it is entitled to payment of its commission. Staying this action will delay its ability to recover, through what may be a years-long legal battle. Black claims that any delay resulting from a stay in favor of the criminal proceedings will be minimal, because criminal matters have docket priority, and therefore the criminal action in Illinois "will come to trial far more quickly than this newly-commenced civil case could possibly be tried in this busy Court." (Def. Reply. 3.) This contention could fool no one familiar with the time-consuming nature of complex white collar criminal litigation. And, of course, if the outcome of the criminal case proves less happy for Black than he hopes, plaintiff's chances of collecting any judgment entered after expensive seriatim criminal and civil litigation could be impaired.

Nor is there any basis for Black's suggestion that plaintiff's claim is really against the Government for seizing the funds that were meant to pay the commission. Plaintiff's contractual relationship is with Black, and it is Black who was obligated to pay if Sotheby's performed under the agreement. It was Black's lawyers, not the Government, who issued Sotheby's a check at the closing. Regardless of the reason the funds supporting that check failed to reach Sotheby's – whether they were embezzled by the lawyers, lost by the bank, or seized by the Government – the relevant fact is that Sotheby's never received payment. Thus, plaintiff's

quarrel is with Black, not with the Government. Similarly, if the Government victimized anyone by wrongful conduct (a question not before this Court), the victim was Black, not Sotheby's, and Sotheby's is under no obligation, and most likely lacks standing, to attack the seizure.

Accordingly, Black's motion for a stay of these proceedings is denied.

II. Plaintiff's Summary Judgment Motion

Sotheby's cross-moves for summary judgment on its breach of contract claim. Summary judgment shall be granted if "there is no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of the non-moving party. Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion," Cifarelli v. Babylon, 93 F.3d 47, 51 (2d Cir. 1996), and can not make any credibility assessments or weigh the evidence, Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996).

Moreover, Sotheby's bears a particularly heavy burden, because it seeks summary judgment before discovery. Such a motion is granted "[o]nly in the rarest of cases." Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000). At the same time, to benefit fully from the presumption in favor of discovery, Black must identify specific matters on which discovery needs to be conducted. See Fed R. Civ. P. 56(f); see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 606 (2d Cir. 2005) (party relying on Rule 56(f) must state "what facts are sought" and "how these facts are reasonably expected to create a genuine issue of material fact").

5

Plaintiff's argument for summary judgment is straightforward. Sotheby's correctly asserts that there is no factual dispute regarding the existence of its contractual agreement with Black, which required Black to pay the commission upon closing of the transaction. In accordance with that agreement, Sotheby's located a party who contracted to purchase the apartment, the transaction closed on October 7, 2005, and the purchaser issued payment to Black at the closing. Sotheby's, however, has received nothing but a valueless check. Thus, Sotheby's contends that the undisputed facts make out all the elements of a breach of contract action: an enforceable agreement; performance by Sotheby's; a breach by Black; and resulting damages to Sotheby's. See Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994).

While implicitly acknowledging the factual underpinnings of plaintiff's position, Black contends that material issues of fact exist in relation to various defenses he in his answer. All but one of these defenses fail as a matter of law.

First, Black argues that the agreement fails for lack of consideration, because he did not receive the proceeds from the sale of the apartment. Black cites no legal authority for this claim, nor does he point to any disputed issue of fact that could possibly bear upon it. (Def. Reply. 8.) Black merely points to a line from his agreement with Sotheby's, a line that in fact dooms his argument: "If the Sales Price is not paid . . . for any cause or reason whatsoever . . . no commission or other compensation shall be due or payable." (Id., quoting Castello Decl. Ex. A.)

Putting aside the fact that Black's argument is based not on a lack of consideration (each party clearly promised something of value to the other), but on a claim of failure of performance, it is substantively unavailing. It is an undisputed fact, acknowledged by Black, that the purchasers *did* pay the sales price. (Hirsch Decl. ¶ 6.) The transaction closed, the sales price

was paid, title passed, and the efforts for which Sotheby's was to be compensated under the plain meaning of the contract were duly consummated. That the sales proceeds were seized from Black's attorney in the elevator *after* they were duly paid by the purchaser does not, under the contractual language relied upon by Black, defeat plaintiff's entitlement to its commission. Accordingly, Black's defense based on failure of consideration fails as a matter of law.

Second, Black argues that S&C properly stopped payment on the check to Sotheby's, and that Sotheby's has not mitigated its damages by litigating the seizure against the Government. Neither component of this objection has any legal merit. Both parties agree that S&C appropriately stopped the check once the funds to support it evaporated.[2] However, the appropriateness of S&C's action is irrelevant with respect to the dispute between Black and Sotheby's. Black cites no authority for the proposition that an agent's good faith refusal to provide payment on behalf of a principal absolves the principal of its obligation to pay the party to which payment is owed. Additionally, as stated above, Sotheby's has no obligation to "mitigate its damages" (Def. Reply. 11) by litigating against the Government. Sotheby's dispute is with Black, and any dispute between Black and the Government is for Black, not Sotheby's, to resolve.

Third, Black argues that it is customary in New York real estate practice for brokerage commissions to be paid out of the initial deposit, and that accordingly that custom should be read into the contract to limit his obligations. Because Black has not had the opportunity to take discovery, the Court will accept as true his assertion regarding New York custom. However, the

---

[2] Since the check was drawn on S&C's escrow account, if the check was allowed to clear, the payment would reduce the balance below what was necessary to support other clients' funds in the account, putting S&C in default of its professional obligations to those clients.

existence of a custom regarding the usual source of payment is a far cry from a contractual provision limiting the source of funds from which a broker may collect a payment it is owed. For example, it is a custom that a shopper at a supermarket pays for his groceries with cash or a credit card from his wallet. If, however, the shopper's wallet is stolen on his way to the store, he is not entitled to free groceries. Rather, the supermarket is entitled to payment from some alternative source, even if the shopper needs to borrow money or return home to obtain additional funds. In this case, wherever the parties expected Black to get the money for the commission, the explicit contract between the parties does not limit in any way the source from which payment could be made, vest Sotheby's with a property interest in any portion of the deposit, or free Black from his obligation if the deposit becomes unavailable.

The contract here is clear and unambiguous, and simply states that "at the closing of the transactions . . . [Black] shall pay to [Sotheby's], a commission . . . equal to Five and One-Half (5.5%) percent of the Sales Price." (Castello Decl. Ex. A.) When a contract has a "'definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion,'" it is unambiguous, Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989), quoting Breed v. Ins. Co., 46 N.Y.2d 351, 355 (1978) (alteration in original), and when a contract is unambiguous, a court may not look to extrinsic evidence of purported custom to vary its terms, Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990).

It would be a heroic feat of interpolation into the parties' actual agreement to read it to provide that Black was not required to pay the commission from any source of funds available to him, or that Sotheby's was entitled to receive payment from the deposit and from no other

8

source, or that title to some part of the deposit somehow passed to Sotheby's at closing, or that Black would have breached the contract by paying Sotheby's with funds other than those located in the escrow account. The contract says none of these things. It simply obliges Black to pay a commission that remains unpaid. Accordingly, Black's defense based on custom regarding the source of funds is without merit.

Finally, Black argues that Sotheby's breached its duty of good faith and fair dealing "by supplying information to the government and participating in the government's planning and execution of the seizure of proceeds from the sale." (Def. Reply. 9.) On the current record, without the benefit of discovery, summary judgment on this defense would be premature.

Under the law of New York, every contract contains an inherent duty of good faith and fair dealing. Van Valkenburgh, Nooger & Neville, Inc. v. Hayden, 30 N.Y.2d 34, 45 (1972). Additionally, a broker such as Sotheby's owes a duty of loyalty to its principal. Dubbs v. Stribling & Assocs., 274 A.D.2d 32, 35 (App. Div. 1st Dep't 2000); see also N.E. Gen. Corp. v. Wellington Adver., Inc., 82 N.Y.2d 158, 164 (1993). As part of this duty of loyalty, a broker is obligated to "use reasonable effort to provide the principal with facts that the [broker] knows . . . when . . . the [broker] knows or has reason to know that the principal would wish to have the facts or the facts are material to the [broker's] duties to the principal; and . . . the facts can be provided to the principal without violating a superior duty owed by the [broker] to another person." Restatement (Third) of Agency § 8.11 (2006).

Black asserts that Sotheby's "had communications with the purchasers and/or the government before the scheduled closing and was aware of and/or provided information that facilitated the government's seizures." (Def. R. 56.1 Stmt. ¶ 21, see also id. ¶ 22.) The Court

9

assumes for purposes of this motion that this is factually accurate. However, it is unclear on the current record what if anything Sotheby's knew about the seizure, when they knew it, what if anything they disclosed to Black, why they didn't disclose certain information to Black (if they didn't), or whether there was a duty to disclose anything at all. At this stage in the litigation, the Court cannot conclude that there is no set of discoverable facts that could support Black's claim that Sotheby's breached its duties to him.

To take just one possible example, discovery may reveal that (1) the Government purposefully waited until after the closing to seize Black's assets because the seizure of liquid assets (the check) presented fewer complications than the seizure of illiquid assets (the apartment); (2) Sotheby's had relevant information regarding the Government's planned seizure; (3) Sotheby's assisted the Government in the seizure because a post-closing seizure was also in its interest, in that it would only be entitled to a commission if the transaction closed; (4) Sotheby's failed to disclose its knowledge to Black regarding the seizure because doing so would jeopardize its commission. Whether and under what circumstances New York law would require disclosure by the broker to its principal, or whether and under what circumstances a request for confidentiality by law enforcement authorities could constitute a "superior duty" trumping the duty to disclose are difficult issues. However, the Court cannot say on this record that there are no facts Black could prove under which a rational factfinder could conclude that Sotheby's breached its duty of loyalty by placing its own interest in obtaining a commission ahead of the interests of Black, its principal. Discovery may well clarify these issues, or even obviate them. In any case, it would be imprudent to attempt to answer these questions for all hypothetical circumstances in the absence of a factual record.

Accordingly, plaintiff's motion for summary judgment is denied with respect to Black's defense that Sotheby's breached its duties of good faith, fair dealing, and loyalty under the contract.

## CONCLUSION

For the reasons stated above, defendant's motion for a stay is denied, and plaintiff's cross-motion for summary judgment is granted in part and denied in part. Summary judgment is granted with respect to defendant's first affirmative defense (justification), second affirmative defense (failure to mitigate), and fourth affirmative defense (lack of consideration). Summary judgment is denied with respect to defendant's third affirmative defense (breach of covenant of good faith and fair dealing). The Clerk of the Court is respectfully directed to close the parties' motions for all internal purposes (Doc. ## 7, 10, 15).

SO ORDERED.

Dated: New York, New York
August 14, 2006

GERARD E. LYNCH
United States District Judge